(No. 34883.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES L. SHANNON, Plaintiff in Error.

*Opinion filed January 23, 1959.*

James L. Shannon, *pro se.*

Latham Castle, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, William H. South, and Francis X. Riley, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

The defendant, James L. Shannon, was indicted by the grand jury of Cook County on two counts: the first for an unlawful sale and the second for unlawfully dispensing narcotic drugs. He waived a jury and was tried and found guilty by the criminal court of Cook County. He was sentenced to the Illinois State Penitentiary for a term of two to ten years. A writ of error was issued to review the judgment and sentence.

Defendant's principal contention is that the evidence failed to prove him guilty beyond a reasonable doubt. He further contends that the State failed to prove the *corpus delicti* of the offense charged and that he was entrapped by the police.

There is no dispute as to the facts. On the night of November 10, 1956, the defendant, a person not shown to be authorized or licensed to sell or dispense narcotic drugs, was in a restaurant near Forty-seventh Street and Cottage Grove Avenue in Chicago. He was approached by one Harold Slayton who asked the defendant where he, Slayton, could get a supply of narcotics. Slayton testified that he referred specifically to heroin. The defendant re-

ferred to it simply as "stuff." Whatever word was used, it is clear they both understood Slayton's request to refer to narcotic drugs.

The defendant then took Slayton down to a corner tavern. On the way, Slayton gave the defendant four one-dollar bills, three dollars of which were for the narcotics and one dollar for the defendant. At the tavern, defendant called one Clarice Clemons aside and arranged for her to get some narcotics for Slayton. She took three of the one-dollar bills, went upstairs in an adjacent hotel and returned with a small brown package containing what was later identified as a supply of heroin. The package was given to the defendant who in turn gave it to Slayton. Shortly thereafter, the defendant and Clarice Clemons were arrested by two police officers who had accompanied Slayton.

Under the foregoing admitted facts, there can be no doubt of the defendant's guilt as charged in count 2 of the indictment. He was there charged with unlawfully dispensing narcotic drugs. The Uniform Narcotic Drug Act (Ill. Rev. Stat. 1955, chap. 38, par. 192.1(19)) defines "dispense" as including "distribute, leave with, give away, dispose of, or deliver." According to the defendant's own testimony, he delivered the narcotics by handing them to Slayton.

The defendant tries to ignore count 2 and argues that there was no sale by him, but asserts that at most he was acting as agent for Slayton as purchaser. "Sale," as defined by the statute (Ill. Rev. Stat. 1955, chap. 38, par. 192.1(10),) "includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee." We interpret the meaning of the word "sale," as defined by the act, to be much broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent,

and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale. Since the agency was admitted and proved, the conviction under counts for dispensing and selling was established beyond a reasonable doubt.

The charge that the State failed to prove the *corpus delicti* of the offense is without merit. Clarice Clemons testified that she purchased from two named persons in room 204 of the hotel, the defendant admitted giving her three of the marked bills, an officer testified that he found such bills in Clarice's possession and the evidence showed that she went upstairs empty-handed and came back with the narcotics. She delivered the package to Shannon who in turn handed it to Slayton. None of the foregoing facts is controverted and they establish the *corpus delicti*.

Defendant next contends that the State is estopped by public policy from prosecuting him for this crime for the reason that he was entrapped by the police. He argues that the criminal design originated, not with the accused, but was conceived in the minds of the police officers. The evidence shows that earlier in the evening, Slayton had been arrested for a traffic violation. Slayton, an admitted "user" of narcotics, had some marijuana in his coat pocket when arrested. At the request of the police and influenced by their promise to go easy on him, he agreed to co-operate in making a "buy" of narcotics in order to permit the police to have the opportunity to arrest the unlawful seller of narcotics. They then went in Slayton's car to the restaurant near Forty-seventh and Cottage Grove where Slayton, after having been given four one-dollar bills that had been marked for identification, contacted the defendant. The police are not shown to have had previous acquaintance or knowledge of the defendant. Neither is it shown that

they had prior knowledge of the place of contact or the particular person to be approached by Slayton. This is not a case of entrapment. The police did not entice, lure or trick defendant but, at most, merely prepared the stage in order to witness whether or not the Narcotics Act would be violated. This case on its facts is very similar to *People* v. *Outten,* 13 Ill.2d 21, and *People* v. *Clark,* 7 Ill.2d 163, recently decided by this court, and they are determinative of the entrapment issue.

The judgment of the criminal court of Cook County is accordingly affirmed.              *Judgment affirmed.*